JUDGE FAILLA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF NEW YORK 13 CV 9061
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARIO FORGIONE AS TRUSTEE OF THE MARIO : 
FORGIONE LTD. DEFINED BENEFIT PLAN, and : 
MARIO FORGIONE LTD. : Case No. _____
                         Plaintiffs, : 

          - against - :

MATTHEW GAGLIO, JOHANNA GAGLIO-BOGEN, :
JEFFREY RICHGAT, JR PENSION SERVICES, INC., :
INTEGRITY ADVISORS PENSION CONSULTANTS, :
INC., NY ROSBRUCH/HARNIK, INC. D/B/A :
STRATEGIES FOR WEALTH, and PARK AVENUE :
SECURITIES, LLC, :
                    Defendants. :
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X



COMPLAINT

RECEIVED
DEC 23 2013
U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiffs, Mario Forgione as Trustee of the Mario Forgione Ltd. Defined Benefit Plan

and Mario Forgione, Ltd. by and through their attorneys, Epstein Becker & Green, P.C. allege as

follows:

## NATURE OF THE ACTION

      1.     This is an action for: (i) compensatory damages and equitable relief pursuant to

the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 *et seq.* (hereinafter

"ERISA") for breach of fiduciary duties; (ii) compensatory damages and equitable relief

pursuant to fiduciaries breaching their fiduciary duties in violation of Section 404 of ERISA (29

U.S.C. § 1104); (iii) compensatory damages and equitable relief pursuant to ERISA for violation

of ERISA's prohibition against fiduciaries engaging in prohibited transactions in violation of

Section 406 of ERISA (29 U.S.C. § 1106); (iv) violation of Section 405 of ERISA (29 U.S.C. §

1105), prohibiting co-fiduciaries from knowingly participating in – or failing to disclose –

another fiduciary's breach of a fiduciary duty; (v) equitable relief pursuant to ERISA for violations of ERISA's code of conduct for actuaries (20 C.F.R. § 901.20); (v) equitable relief pursuant to Section 404 of ERISA for violations of ERISA's record keeping rules; (vi) equitable relief and compensatory damages under New York State Law for fraudulent misrepresentation; (vii) equitable relief, compensatory damages, and punitive damages under New York State Law for deceptive business practices; (viii) equitable relief and compensatory damages under New York State Law for breach of the covenant of good faith and fair dealing; (ix) compensatory damages under New York State Law for negligence; and (x) compensatory damages for actuarial malpractice.

## JURISDICTION

2.     The jurisdiction of this Court is invoked pursuant to Sections, 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), 1132(a)(8) (ERISA §§ 502(a)(2), 502(a)(3), and 502(a)(8)) and 28 U.S.C. § 1331.  Additionally, this court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 with respect to Plaintiffs' state law claims.

## VENUE

3.     Venue is proper in this District pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) as the Plan is administered within this District.

## PARTIES
### *Mario Forgione*

4.     Mario Forgione ("Forgione") was born in Italy.

5.     Italian was Mario Forgione's first language.

2

6.     Since the age of seven, Mario Forgione has worked as a landscaper.

7.     In 1996, Mario Forgione started his own landscaping business, Mario Forgione Ltd. (the "Company").

8.     In 2005, Mario Forgione had no knowledge of pension or retirement plans or ERISA.

9.     Mario Forgione is the named trustee of the Mario Forgione Ltd. Defined Benefit Plan (the "Plan").

### *Mario Forgione Ltd.*

10.     The Company is a commercial and residential landscaping business that is 100% owned by Mario Forgione.

11.     The Company has been in operation since 1996.

12.     The Company is and has been operated by Mario Forgione and his wife Elisa Forgione (the "Forgiones"), as well as a small office staff that has varied in size of between one and two people, and a crew of landscaping workers, all of whom have been paid as employees with wages reported on Internal Revenue Service ("IRS") Forms W-2.

13.     For calendar years 2005 to 2012, the gross revenues of the Company varied between $1,500,000 and $2,500,000 per year.

14.     Mario Forgione Ltd. is the Plan sponsor.

FIRM:24237892v11

## *Defendant Matthew Gaglio*

15.     At all relevant times between 2005 and mid-2012, Defendant Matthew Gaglio ("Gaglio") has been a life insurance salesman selling Guardian Life Insurance Company ("Guardian") products.

16.     Upon information and belief, at all relevant times between 2005 and mid-2012, Defendant Gaglio's primary source of income has been derived from commissions earned on Guardian products that he sells.

17.     Upon information and belief, at all relevant times between 2005 and mid-2012, Defendant Gaglio had not passed the Series 65 exam, an exam which is administered by the Financial Industry Regulatory Authority ("FINRA"). Successful completion of the Series 65 exam qualifies a person to provide investment advice for a fee. To become a Certified Financial Advisor ("CFA"), one must know about retirement planning, portfolio management, and fiduciary obligations. Because he has not passed the Series 65 exam, Defendant Gaglio is not a CFA. Because at all relevant times between 2005 and mid-2012, Defendant Gaglio was not a CFA, Defendant Gaglio was prohibited from charging clients fees for investment advice. Rather, his compensation was derived as commissions from sales of Guardian Life Insurance products.

18.     Despite this, Defendant Gaglio sent invoices to Forgione and the Company that made them believe they were paying him a fee. Unbeknownst to Forgione and the Company, these documents labeled "invoices" were not actually invoices. Rather they were bills for life insurance premiums that Defendant Gaglio remitted to Guardian.

19.     At all relevant times between 2005 and mid-2012, Defendant Gaglio represented and advertised himself to the general public as a financial planner with the designation "CEP."

4

20.     Upon information and belief, CEP stands for Certified Estate Planner, which is not a designation recognized in New York State and has nothing to do with retirement planning.

21.     At all relevant times between 2005 and mid-2012, Defendant Gaglio was a service provider to the Plan.

### *Defendant Park Avenue Securities*

22.     At all relevant times between 2005 and mid-2012, Defendant Park Avenue Securities, LLC ("PAS") was an indirectly wholly owned subsidiary of Guardian and was established by Guardian in 1999 as a retail broker/dealer.

23.     At all relevant times between 2005 and mid-2012, Defendant PAS was a service provider to the Plan.

24.     Defendant PAS maintains a website which states that Guardian created Defendant PAS with the express purpose of permitting its financial advisors to help meet the investment needs of their clients.

25.     On its website, Defendant PAS advertises that a financial representative who is a licensed insurance agent of a Guardian affiliate will provide insight and guidance for Defendant PAS's customers.

26.     Defendant PAS also advertises on its website that its dual registration with FINRA as a retail broker dealer and Registered Investment Advisor allows clients the flexibility of transaction-based business with fee-for-service capability.

FIRM:24237892v11

27.     Specifically, Defendant PAS advertises on its website that it offers a wide array of financial products from both Guardian affiliates and other providers, and it advertises that it works closely with a select group of third-party advisory firms to provide clients with institutional level solutions.

28.     Pursuant to its website, Defendant PAS provides clients with access to money managers who are paid to manage client accounts.

29.     Defendant PAS also advertises on its website that it offers a robust line-up of investment advisory programs, sponsored by Defendant PAS through its proprietary platform, as well as through arrangements with select third party institutional asset managers, each with their own investment approach.  Defendant PAS advertises that with these programs, a Defendant PAS representative will provide advisory services for an annual fee to help clients plan for their needs.  Defendant PAS also advertises that it offers services such as financial planning through its financial representatives.

30.     Defendant PAS also advertises on its website that, through its parent company Guardian, and its affiliates, its clients have access to life and disability income insurance, as well as a full range of investment products and services.

31.     Defendant Gaglio is affiliated with Defendant PAS.  Specifically, Defendant PAS's website states that Defendant Gaglio, as a Financial Representative of Guardian, offers securities products/services and advisory services through Defendant PAS.

6

### *Defendant Strategies For Wealth*

32.     As advertised on its website, one of the entities with which Defendant PAS's money managers/financial representatives work is Defendant Strategies for Wealth ("SFW").

33.     One can contact Defendant SFW through a form on Defendant PAS's website

34.     Defendant SFW, a Guardian franchise office that sells Guardian life insurance and is an agent of Guardian, advertises Defendant PAS on its website.

35.     At all relevant times between 2005 and mid-2012, Defendant Gaglio was employed by Defendant SFW.

36.     At all relevant times between 2005 and mid-2012, Defendant SFW was a service provider to the Plan.

37.     Defendant SFW also advertises Defendant Gaglio on its website and states that Defendant Gaglio's "mission statement" is:  "I help my clients navigate through the myriad of options of contemporary wealth management and identify the tools needed to build upon their wealth.  As part of a family business, I devote myself to long-term business relationships driven by trust and partnership."

38.     Defendant Gaglio is also advertised on Defendant SFW's website as providing retirement planning strategies, business planning for small and medium businesses, qualified retirement plans, estate planning and preservation, insurance planning, and investment planning and strategies.

FIRM:24237892v11

39.     Additionally, Defendant SFW's website represents that Defendant Gaglio is a Financial Advisor/Registered Representative who is qualified to advise business owners and who specializes in assisting self-employed business owners in recovering substantial tax dollars legally and professionally.  The website also states that Defendant Gaglio's specific areas of focus include strategic advice regarding changes in current tax law, qualified/non-qualified pension and executive benefit retirement trusts, qualified tax shelters, estate and distribution planning, asset protection, investment strategies, and individual planning for high net worth individuals.

40.     Defendant SFW's website states that Defendant Gaglio is insurance licensed in California, Connecticut, Florida, Georgia, Massachusetts, Maryland, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, and Texas, and securities licensed in California, Connecticut, Florida, Georgia, Massachusetts, Maryland, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, and Texas.  Upon information and belief, this means Defendant Gaglio is licensed to sell mutual funds, index funds, and life insurance.  It does not mean that Defendant Gaglio is licensed to provide clients with financial advice for a fee.

41.     Even though Defendant Gaglio was only licensed to sell mutual funds, index funds, and life insurance, he never told Forgione and the Company that he was a salesman during the period of 2005 through mid-2012.

### *Defendant Integrity Advisors Pension Consultants Inc.*

42.     Upon information and belief, Defendant Integrity Advisors Pension Consultants Inc. ("Integrity") was founded by Salvatore Gaglio, the father of Defendant Matthew Gaglio and Defendant Johanna Gaglio-Bogen.

8

43.     Defendant Integrity's website lists 11 professionals on its website: Salvatore Gaglio, Founder & Chairman Emeritus, CLU®, CFP®; Defendant Matthew Gaglio, Registered representative, President, CEP®; Defendant Johanna Gaglio-Bogen, Registered Representative, Vice President, Director of Operations; Janice Luckasavage, Administration; Elissa Winter, Pension Administration; Joseph M. Gaglio, Registered Representative, Marc A. Mirabella, Registered Representative; Charles Gonzalez, Registered Representative, Vice President, Bilingual Specialist; Martino Cecere, Administration/Broker; and Catherine Edwards, Manager of Client Services.

44.     Defendant Integrity's website describes Defendant Integrity as a multi-faceted financial services organization serving the individual and business communities.

45.     Defendant Integrity advertises on its website that it "uses its unique knowledge and experience in the design and implementation for qualified retirement plans to help [its] client maximize wealth and reduce income tax liabilities. Our key strength is staying current on changes in federal tax law that impact business owners."

46.     Defendant SFW's website advertises Defendant Gaglio as a principal of Defendant Integrity and provides contact information for Defendant Gaglio through an email address at Defendant Integrity - mgaglio@integrityadvisor.com.

47.     At all relevant times between 2005 and mid-2012, Defendant Gaglio was affiliated with Defendant Integrity.

48.     Additionally, Defendant Integrity's website states that its people are Registered Representatives of – and offer securities products and securities through – Defendant PAS.

9

49.     At all relevant times between 2005 and mid-2012, Defendant Integrity was a service provider to the Plan.

### *Defendant Johanna Gaglio-Bogen*

50.     Upon information and belief, Defendant Johanna Gaglio-Bogen ("Gaglio-Bogen") is the daughter of Salvatore Gaglio, the founder of Defendant Integrity.

51.     Upon information and belief, Defendant Gaglio-Bogen is the sister of Defendant Gaglio.

52.     Defendant Integrity advertises Defendant Gaglio-Bogen on its website as "Registered Representative, Vice President, Director of Operations."

53.     Defendant Gaglio-Bogen's business card, which she gave to Forgione and the Company, represents her to be a "Registered Representative of Park Avenue Securities."

54.     Despite these representations by Defendant Integrity and Defendant Gaglio-Bogen, it is unclear what qualifications or knowledge Defendant Gaglio-Bogen possessed regarding retirement and/or pension plans at all relevant times between 2005 and mid-2012.

55.     At all relevant times between 2005 and mid-2012, Defendant Gaglio-Bogen was a service provider to the Plan.

### *Defendant Jeffrey Richgat and Defendant JR Pension Services Inc.*

56.     Upon information and belief, Defendant Jeffrey Richgat ("Richgat") has been an enrolled actuary since 1992.

FIRM:24237892v11

57.     An "enrolled actuary" is defined as an individual who has met the requirements and qualifications established by the Joint Board for the Enrollment of Actuaries and who has been approved by the Joint Board to perform "actuarial services" under ERISA and the regulations thereunder.

58.     Under the Department of Labor's Regulations, "actuarial services" means "performance of actuarial valuations and preparation of any actuarial reports."

59.     ERISA requires that an enrolled actuary meet certain qualifications.

60.     Those qualifications include education and training in actuarial mathematics and methodology, and having an appropriate period of responsible actuarial experience. Specifically, an enrolled actuary must have completed within a 10-year period, either: (i) a minimum of 36 months of "certified responsible pension actuarial experience," or (ii) a minimum of 60 months of certified responsible actuarial experience, including at least 18 months of certified responsible pension actuarial experience.

61.     To become an enrolled actuary, Defendant Richgat was required to pass an examination which tested him on specific topics, including, but not limited to, Section 415 of the Internal Revenue Code, top-heavy plans, maximum benefit limitations, reporting and disclosure requirements, Pension Benefit Guaranty Corporation "PBGC" premium requirements, and fiduciary standards.

62.     At all relevant times between 2005 and mid-2012, Defendant Richgat was employed by Guardian as an actuary.

11

63. However, Forgione and the Company did not know that Defendant Richgat was employed by Guardian.

64. At all relevant times between 2005 and mid-2012, Defendant Richgat maintained his own business that provided actuarial and other services, Defendant JR Pension Services, Inc. ("JR"), at the address 45 John Street Apartment 711, New York, NY 10038. Through Defendant JR, Defendant Richgat provided actuarial and other services.

65. At all relevant times between 2005 and mid-2012, Defendant Richgat and Defendant JR were service providers to the Plan.

## BACKGROUND
### *Forgione and the Company Begin Exploring Financial Planning Options*

66. In 2005, as the Company's revenues increased, Forgione and the Company began to explore financial planning options. At all relevant times between 2005 and mid-2012, they lacked knowledge of financial planning and a sophisticated knowledge of ERISA.

### *Forgione and the Company Were Referred to Defendant Gaglio Who Falsely Represented that He Had the Qualifications – and Ability – to Assist Them with Their Financial Planning/ Retirement Planning Needs*

67. Forgione and the Company were referred to Defendant Gaglio by an individual who, upon information and belief, has since become insolvent as a result of following Defendant Gaglio's financial advice.

68. On several occasions during the spring of 2005, Defendant Gaglio and Defendant Gaglio-Bogen met with the Forgiones at the Company's offices.

FIRM:24237892v11

69.     During those meetings, and continuing through May of 2012, Defendant Gaglio falsely represented himself to be a registered financial advisor with appropriate certifications and a specific expertise in retirement programs and employee benefit plans.

70.     Elisa Forgione specifically asked Defendant Gaglio about his qualifications, and he told her that he was licensed, as a financial advisor, by the state of New York.

71.     Defendant Gaglio gave Forgione and the Company a business card which provided no information about Defendant Gaglio's title on the front, merely representing that he worked for Defendant Integrity.  Defendant Gaglio's position as a "Registered Representative and Financial Advisor of Park Avenue Securities LLC" was mentioned in fine print on the back of the card.

72.     The business card failed to disclose that Defendant Gaglio's primary employment was as a Guardian life insurance agent working for Defendant SFW.

73.     Defendant Gaglio represented himself to Forgione and the Company as being knowledgeable about the structure and administration of retirement programs and benefit plans. Defendant Gaglio assured Forgione that he had the expertise and knowledge to design and implement a retirement program that would be specifically suitable for his needs and those of the Company.

74.     Defendant Gaglio also advised Forgione and the Company of his association with Defendant PAS.  Defendant Gaglio told Forgione and the Company that through Defendant Integrity and Defendant PAS, he was equipped to address and solve Forgione's retirement needs.

FIRM:24237892v11

### *The Forgiones Told Defendant Gaglio That They Wanted to Legally Maximize Retirement Benefits For Themselves While Minimizing Cost and Tax Liability*

75.     In the 2005 meetings with Defendant Gaglio, the Forgiones clearly stated that they wanted to legally maximize tax savings for themselves. They did not tell Defendant Gaglio that they wanted a retirement plan or a pension plan. Rather, they simply told him that they wanted to shelter some income from taxes. Defendant Gaglio advised that they should begin to save for their retirements and suggested they do so by having the Company establish a defined benefit pension plan.

76.     Defendant Gaglio represented that the benefit of a defined benefit plan was that the Forgiones could defer taxes on a large portion of revenue. Defendant Gaglio recommended that the defined benefit pension plan be funded with whole life insurance policies on Mario Forgione and Elisa Forgione, which Defendant Gaglio said would help Forgione and the Company meet their financial goals. Defendant Gaglio failed to advise that the sole source of his compensation for this "financial planning" would be based on his sale of whole life insurance.

77.     Prior to the 2005 meetings with Defendant Gaglio and Defendant Gaglio-Bogen, Forgione and the Company had no knowledge of ERISA and knew nothing about the difference between defined benefit plans and defined contribution plans.

78.     Based on their 2005 meetings with Defendant Gaglio and Defendant Gaglio-Bogen, Forgione and the Company reasonably relied on Defendant Gaglio for the advice which they needed for the design and administration of a retirement program that was suitable for their Company and followed Defendant Gaglio's advice to allow him to draft the necessary documents as well as structure the steps necessary to establish the Plan.

14

79.     Defendant Gaglio assured Forgione and the Company that he would create a pension plan that could provide the Company with the appropriate tax deductions and tax deferred benefits, and he continued to represent through 2012 that the pension plan he created would provide the Company with the appropriate tax deductions and tax deferred benefits.

80.     Defendant Gaglio initially advised the Forgiones that they could establish a plan that would provide benefits only to themselves and which would be funded primarily by whole life insurance policies on themselves.

81.     Defendant Gaglio, himself, did not mention putting any other employees in the Plan at any time between 2005 and 2012.

### _Although Defendant Gaglio Handled the Whole Life Insurance Portion of the Plan Portfolio, He Directed Forgione and the Company to Defendant Gaglio-Bogen to Invest the Non-Insurance Portion of the Plan's Assets_

82.     At all relevant times between 2005 and mid-2012, Defendant Gaglio-Bogen directed and made all decisions regarding the investment of the non-life insurance portion of the Plan.

83.     In the spring of 2005, Defendant Gaglio-Bogen provided Forgione and the Company with a business card that stated she was a pension consultant and a "registered representative" of PAS, a "member" of FINRA.

84.     At one of their first meetings, on April 2, 2005, Defendant Gaglio-Bogen asked Forgione a series of questions, the answers to which she stated that she needed to invest the non-insurance assets of the Plan.

15

85.     At all relevant times beginning in 2005 and continuing through 2012, Defendant Gaglio-Bogen served as investment advisor to the Plan for the non-whole life insurance portion of the Plan.

### *The Plan Was Defective From Its Inception*

86.     Despite their purported expertise in retirement plans and ERISA, Defendant Gaglio and Defendant Gaglio-Bogen permitted the Plan to be established for only two participants, Mario Forgione and Elisa Forgione, until 2008.

87.     Although it should have been apparent to Defendant Gaglio and Defendant Gaglio-Bogen from their meetings at the Company, based on the existence of equipment, the number of employees at the facility, and the Company's gross revenues, that more than two people had been needed to perform the landscaping work, and despite knowledge that the Company had a crew of landscape workers, Defendant Gaglio and Defendant Gaglio-Bogen never sought to ascertain how many hours each member of the crew of landscaping workers worked in a 12-month period, and they failed to advise Forgione, who had no knowledge of ERISA, that employees, seasonal or not, would be eligible to participate in the Plan as long as they had worked in excess of 1,000 hours during a plan year.

88.     Additionally, at no time between 2005 and 2012 did Defendant Gaglio or Defendant Gaglio-Bogen ever ask Forgione how many hours the landscaping crew worked (even though the landscaping crew worked nine months per year or more).

89.     Similarly, at no time between 2005 and 2012, did Defendant Gaglio or Defendant Gaglio-Bogen ever ask Forgione how many employees the Company had, nor did Defendant Gaglio or Defendant Gaglio-Bogen ever ask to look at the payroll records of the Company or ask

16

for the dates of birth of the employees, even though they would have needed this information to properly set up the Plan.

90.     On the contrary, at all times between 2005 and 2012, Defendant Gaglio and Defendant Gaglio-Bogen both incorrectly told Forgione and the Company that the crew of landscapers did not need to be included as participants in the Plan because they were "seasonal" workers.

91.     Specifically, Defendant Gaglio and Defendant Gaglio-Bogen advised the Company it did not have to include the crew of landscapers because they were "seasonal" even though Forgione and the Company informed Defendant Gaglio and Defendant Gaglio-Bogen that these "seasonal" workers worked during the three seasons of spring, summer, and fall and advised that these "seasonal" workers would work during the winter when there was snow.

92.     Despite their purported knowledge of ERISA and employee benefit plans, during the period from 2005 through 2012, Defendant Gaglio and Defendant Gaglio-Bogen failed to advise the Company that seasonal employees could be eligible to participate in the Plan if they worked in excess of 1,000 hours in a plan year.

93.     As knowledgeable pension consultants, Defendant Gaglio and Defendant Gaglio-Bogen were required to know about the 1,000 hour requirement.

94.     A pension plan which permits more than 60% of the assets to belong to highly compensated employees is a top-heavy plan and violates Section 416 of the Internal Revenue Code. This violation can result in disqualification of the Plan unless minimum contributions are made for non-key employees.

17

95.     A loss of tax deferred status will cause a plan to become disqualified and lose its tax exempt status, thereby causing all assets to become taxable.

96.     As structured by Defendant Gaglio and Defendant Gaglio-Bogen, the Plan violated Section 416 of the Internal Revenue Code.

97.     Despite these facts, between 2005 and 2012, Defendant Gaglio and Defendant Gaglio-Bogen failed to advise Forgione and the Company of the requirement to provide benefits for its crew of landscapers.

98.     In fact, until 2008, Defendant Gaglio-Bogen specifically told Forgione and the Company just to include two people in the Plan.

99.     If Defendant Gaglio and Defendant Gaglio-Bogen had advised Forgione and the Company of the requirement to provide benefits for the Company's crew of landscapers, the Company would have never established the Plan.

100.     Defendant Gaglio-Bogen also performed administrative tasks for the Plan by administering loans to participants from the Plan.

### *Defendant Richgat's Negligence in Drafting the Plan*

101.     A prototype plan is a generic plan in which all terms have been approved by the IRS, thus making the plan qualified.

102.     A generic plan contains numerous options; however, not all options can be adopted together.

18

103.     A prototype plan will contain a menu of possible terms that a plan sponsor may elect to include in a plan, when it is designing same.

104.     The "plan document" for a prototype plan is normally comprised of the prototype plan and an adoption agreement.

105.     An adoption agreement to a prototype plan permits a plan sponsor to choose various features of the prototype plan by selecting and checking off various options which are listed in the adoption agreement, thereby permitting a plan sponsor to select some, but not all, of the features contained therein, thereby designing the plan.

106.     During the period from 2005 to 2012, the plan documents for the Plan consisted of a Guardian prototype plan ("prototype") and a Guardian adoption agreement ("adoption agreement").

107.     Upon information and belief, Defendant Gaglio utilized the prototype because as an employee of Defendant SFW, he was required to sell Guardian products.

108.     Upon information and belief, the prototype was represented to the Company as having been reviewed and qualified by the IRS.

109.     Upon information and belief, Defendant Richgat began communicating with Defendant Gaglio and Defendant Gaglio-Bogen about the Plan as early as the spring of 2005.

110.     Upon information and belief, Defendant Richgat was instructed by Defendant Gaglio to "draft" the plan documents for the Plan.

FIRM:24237892v11

111. Upon information and belief, Defendant Richgat began to draft the documents for the Plan in 2005.

112. Upon information and belief, drafting plan documents is an attorney function, not an actuarial function.

113. Upon information and belief, Defendant Richgat drafted the plan documents of the Plan by completing the adoption agreement to the prototype pursuant to the directions of Defendant Gaglio and without the knowledge or consent of Forgione or the Company.

114. Upon information and belief, Defendant Richgat was not an attorney and was not qualified to draft a plan document.

115. The adoption agreement to the prototype was structured to permit a plan sponsor to select various provisions of the prototype plan to create a complete plan document by filling in boxes.

116. The adoption agreement contained a box which was required to be checked to select the level of benefits for participants in the Plan.

117. The benefit level was calculated as a percentage of a participant's monthly compensation.

118. Specifically, Item 7 of the adoption agreement as completed by Defendant Richgat provided that the benefit "payable in the Normal Form at the Participant's Normal Retirement Date shall be … 154% of a participant's monthly compensation."

FIRM:24237892v11

119. By drafting Item 7 of the adoption agreement at an amount equal to 154% of a participant's monthly compensation, Defendant Richgat negligently drafted the adoption agreement in violation of Section 415 of the Internal Revenue Code which prohibits a benefit to be provided in an amount greater than 100% of a participant's monthly compensation, caused the Plan to be administered in violation of the plan document, and caused the Plan to be a customized plan thereby rendering the IRS opinion letter provided for the prototype invalid for the Plan.

120. Upon information and belief, despite his alleged expertise as an actuary, Defendant Richgat, who reviewed the Plan's funding on an annual basis from 2005 through 2012, never corrected that provision nor advised the Company or Forgione that the Plan, as customized, violated Section 415 of the Internal Revenue Code, nor did he obtain a qualification letter from the IRS.

121. By miscalculating the benefit to be 154%, and maintaining the same through 2012, Defendant Richgat increased the minimum contribution requirement to fund the Plan's whole life policies.

122. Either Defendant Richgat was negligent in drafting the Plan, or he purposefully drafted the monthly benefit to be greater than 100% for the purpose of increasing the amount of whole life insurance that could be sold to the Company.

123. Despite the bold print in the adoption agreement which limited the monthly benefit amount and his alleged expertise in employee benefits as an enrolled actuary, Defendant Richgat drafted the Plan with a benefit equal to 154% of a participant's monthly compensation.

FIRM:24237892v11

124.   Based on his qualifications, education, and the bolded language in the Plan, Defendant Richgat knew or should have known the limitation that benefits could not exceed 100% of compensation.

125.   This error resulted in the Company having to buy more life insurance from Defendant Gaglio to fund the Plan during the period from 2005 through 2012.

126.   This drafting error by Defendant Richgat resulted in the customization of the Plan, thereby rendering inapplicable the letter from the IRS approving the prototype.

127.   Therefore, for the period from 2005 through 2012, the Plan was administered improperly as a customized Plan for which no IRS qualification letter had ever been issued nor sought.

128.   This error resulted in the establishment of a Plan which, contrary to representations of the Defendants, had not been qualified by the IRS.

129.   After making the initial mistake, Defendant Richgat failed to correct his error, and for each subsequent plan year, he produced valuation reports for the Plan in which he erroneously noted: "Normal Retirement Benefit: 154% of compensation" for plan years 2005 through 2011 on each plan year's annual valuation report.

## *Defendant Richgat Was Retained by Defendant Gaglio and Defendant Gaglio-Bogen to Administer the Plan*

130.   Upon information and belief, it was the decision of Defendant Gaglio and Defendant Gaglio-Bogen to retain Defendant Richgat and his company, Defendant, JR, to administer the Plan.

FIRM:24237892v11

131.   Although Defendant Richgat was involved in the Plan beginning in 2005, the Company and Forgione were not made aware of that fact until receipt of an invoice from Defendant Richgat in 2007.

132.   Forgione and the Company first became aware of Defendant Richgat's involvement in the administration of the Plan in 2007, when Elisa Forgione, after asking Defendant Gaglio-Bogen about an invoice from Defendant Richgat, was advised by Defendant Gaglio-Bogen that she and Defendant Gaglio had retained Defendant Richgat as an actuary for the Plan.

133.   Defendant Richgat advised Forgione and the Company that he had performed work for the Plan "as requested by [Forgione's] advisor, Matthew Gaglio."

134.   Upon information and belief, despite serving as Administrator and actuary of the Plan for the period 2005 through mid-2012, Defendant Richgat failed to advise Forgione, the Company and the Plan of his employment with Guardian or of the conflict of interest.

135.   Upon information and belief, despite serving as Administrator and actuary of the Plan for the period from 2005 through mid-2012, Defendant Richgat failed to advise Guardian of his work with the Plan or of the conflict of interest.

136.   Despite serving as Administrator and actuary of the Plan for the period from 2005 through mid-2012, Defendant Richgat failed to obtain a conflict of interest waiver from the Company, Forgione, or the Plan or, upon information and belief, from Guardian.

FIRM:24237892v11

137.     The retention of Defendant Richgat to administer the Plan by Defendant Gaglio and Defendant Gaglio-Bogen was not made known to Forgione and the Company until sometime in 2007.

138.     The effect of Defendant Richgat's drafting error and subsequent cover-up of the error while he served as Administrator of the Plan had detrimental effects, including the fact that the Plan was administered in violation of Section 415 of the Internal Revenue Code and the Plan documents for several years, thereby making the Plan subject to being disqualified, and the fact that the amount of premiums for whole life insurance were significantly increased to pay for the benefit for the period from 2005 to 2012.

139.     By customizing the prototype, Defendant Richgat forfeited the protection of the IRS opinion letter approving the Guardian prototype.

140.     Despite his deviation from the Guardian prototype in favor of a custom plan, during the period from 2005 to 2012, Defendant Richgat never applied to the IRS for an opinion letter approving his custom plan.

141.     As a result of the negligence of Defendant Richgat, Defendant Gaglio, and Defendant Gaglio-Bogen, the Plan was exposed to disqualification by the IRS, thereby creating a significant tax liability from 2005 to 2012.

142.     As a result of the negligence of the defendants Richgat, Gaglio and Gaglio-Bogen, the Plan was subject to disqualification from its inception through 2012, thereby forcing the Company to incur significant expense having to correct the Plan and file an application pursuant to the Voluntary Correction Program with the IRS.

FIRM:24237892v11

143. It was not until 2008, that Defendant Gaglio and Defendant Gaglio-Bogen informed Forgione and the Company that they had to provide benefits for any other employees. By this point, the Company had paid life insurance premiums well in excess of the surrender value of the respective policies. It was not until 2008, that Defendant Gaglio and Defendant Gaglio-Bogen advised Forgione and the Company that the Plan had to offer benefits to persons other than themselves and at that point, they were only advised to purchase Guardian whole life insurance policies for two employees, Anita Schwartz and Rocco Forgione.

144. At no time between 2005 and 2012, however, did Defendant Gaglio or Defendant Gaglio-Bogen advise the Plaintiffs that they had to permit the landscaping crew to participate in the Plan.

145. Upon information and belief, Defendant Gaglio received a commission on the sale of all Guardian whole life insurance policies for participants in the Plan for the period from 2005 to 2012.

146. The knowing failure of Defendant Richgat to advise the plaintiffs of the Section 415 violations continued for several years between 2005 and 2012 because he prepared valuation reports for plan years 2007 through 2010, all of which indicated that more than 60% of the accrued assets in the Plan were for Mario Forgione and Elisa Forgione, thus making the Plan top-heavy for those years.

147. Despite completing those reports on an annual basis, at no time between 2005 and 2012 did Defendant Richgat ever tell Plaintiffs that the Plan should not be top heavy, even though as an actuary he was required to know the applicable sections of the Internal Revenue

FIRM:24237892v11

Code, and to become an actuary, he had to pass an examination that included an area on Section 415 of the Internal Revenue Code.

148.    Defendant Gaglio failed to provide the valuation reports to the Company or Forgione for plan years 2005 through 2008, but rather provided them to Defendant Gaglio-Bogen.

### *Defendant Gaglio and Defendant Gaglio-Bogen Served As Fiduciaries With Respect to the Plan*

149.    Pursuant to 29 U.S.C. § 1002(21)(A), anyone who: (1) exercises discretionary authority over plan assets; (2) renders investment advice to a plan for either direct or indirect compensation (or has the authority to do so); or (3) has any discretionary authority or responsibility in the administration of the Plan, is a functional fiduciary.

150.    Between the period from 2005 through 2012, Defendant Gaglio and Defendant Gaglio-Bogen provided investment advice to Forgione and the Company regarding the types of investments which were "proper" and would suit the Plan's needs, both as to the whole life insurance component and the non-whole life insurance component of the asset portfolio of the Plan.

151.    In doing so, both Defendant Gaglio and Defendant Gaglio-Bogen provided advice to the Plan on the investment of Plan assets for the period of 2005 through 2012.

152.    In performing these tasks from 2005 to 2012, Defendant Gaglio and Defendant Gaglio-Bogen acted as financial advisors and, as such, fiduciaries pursuant to ERISA.

26

153.    The Company and Forgione relied on Defendant Gaglio's and Defendant Gaglio-Bogen's advice with regard to investing Plan assets for the period from 2005 to 2012.

154.    Additionally, Defendant Gaglio-Bogen was a fiduciary because, she provided administrative services to the Plan and was an Administrator of the Plan for the period from 2005 to 2012.

### *Defendant Richgat's Role as the Administrator of the Plan*

155.    Between 2005 and 2012, Defendant Richgat, through his company Defendant JR, regularly prepared invoices for actuarial services provided to the Company, detailing how those services were rendered and demanding fees.

156.    Between 2005 and 2012, Defendant Richgat regularly worked at the behest of and according to the specifications provided by Defendant Gaglio, the financial advisor.

157.    In addition to acting as an actuary, during the period from 2005 through 2012, Defendant Richgat performed administrative tasks for the Plan in addition to filing Forms 5500, drafting the adoption agreement of the Plan, and drafting Plan amendments.

158.    Although the Plan was required to be amended to incorporate certain provisions required by changes in law and regulations and to be restated for changes required by the Economic Growth and Tax Relief Reconciliation Action of 2001 ("EGTRRA") not later than April 30, 2010, Defendant Richgat failed to amend the Plan even though Defendant Richgat knew that he was relied upon for all updates to the Plan document.

159.    Upon information and belief, Defendant Richgat and Defendant JR failed to provide updates after the Plan's adoption and through 2012.

27

160.     Defendant Richgat also failed to provide the annual plan funding notice to the PBGC, Plan participants, and Plan beneficiaries during the period from 2005 through 2012.

161.     Although Defendant Richgat, through Defendant JR, annually charged Plaintiffs for the period from 2005 to 2012, a fee for services rendered in connection with keeping the Plan "IRS compliant," the Plan was never IRS compliant despite Defendant Richgat's false representations that it was.

162.     The services which Richgat performed were invoiced and/or paid on or about: December 12, 2005; February 23, 2007; February 29, 2008; May 8, 2009; February 23, 2010; June 1, 2010; March 9, 2011; March 23, 2011; June 21, 2011; May 17, 2012.

163.     By acting as Plan Administrator to the Plan, Defendant Richgat was a fiduciary of the Plan for the period from 2005 through 2012.

### *Defendant Gaglio Continued to Provide Incorrect and Misleading Information to Plaintiffs as Late as May 2012*

164.     In 2012, Forgione and the Company realized that they could not sustain contributions to the Plan for four participants and were not being properly advised by the Defendants.  After consultation with other professionals, Forgione and the Company discovered that gross errors had been committed by the Defendants in the administration of the Plan.

165.     They discovered that the defined benefit plan which had been recommended by Defendant Gaglio, as structured, violated the Internal Revenue Code and was subject to being disqualified.

FIRM:24237892v11

166.    Forgione and the Company learned that because the crew of landscapers had worked in excess of 1,000 hours each year, they were entitled to a pension benefit contribution for plan years 2005 through 2012.

167.    Forgione and the Company learned that Defendant Gaglio and Defendant Gaglio-Bogen had failed to mention the 1,000 hour requirement during the period from 2005 to 2012 despite their purported knowledge and expertise in pension funds and ERISA.

168.    Forgione and the Company also discovered that the Plan, which Defendant Richgat had prepared, and which Defendant Gaglio had sold them, provided a benefit for participants in an amount equal to 154% of a participant's monthly income during the period from 2005 to 2012.

169.    Forgione and the Company learned that the Plan, drafted and administered by Defendant Richgat, Defendant Gaglio, and Defendant Gaglio-Bogen, during the period from 2005 to 2012, violated the Internal Revenue Code by exceeding 100% of a participant's monthly income and violated ERISA by being contrary to the terms of the Plan document, which prohibited benefits greater than 100% of monthly income.  Forgione and the Company also discovered that Defendant Gaglio and Defendant Richgat had neglected to properly update the Plan Documents about current procedures in the administration of loans from Plan assets.

170.    Forgione and the Company learned that the Plan, drafted by Defendant Richgat, was not a prototype plan approved by the IRS, but was a custom plan for which an IRS opinion letter indicating it was qualified had never been issued nor requested.  This was despite representations by Defendants that the Plan was qualified.

29

171.    Additionally, Forgione and the Company learned that whole life insurance was not a proper retirement investment vehicle for their business.

172.    Forgione and the Company also discovered that Defendant Gaglio had ignored their instructions to run the Plan as a retirement plan, and the Plan was structured and drafted by Defendant Gaglio to allow participants to take money out of the Plan upon termination of employment during the period from 2005 to 2012.

173.    During the period from 2005 to 2012, Forgione and the Company lost money as a result of the actions referenced in paragraph 172.

174.    Forgione and the Company also learned that as Plan Administrator, during the period from 2005 to 2012, Defendant Richgat should have provided annual funding notices to the PBGC, Plan participants, and Plan beneficiaries.

175.    As of April 6, 2011, the Company had paid $806,487.63 into the Plan. Of that amount, $379,450.30 was invested in whole life insurance policies for the Forgiones, yet the surrender value of these policies was a mere $255,496.70.

176.    In or around the summer of 2012, Plaintiffs discovered for the first time that Defendant Gaglio's compensation had been limited to commissions earned on whole life insurance products that he sold as a life insurance agent for Guardian.

177.    Forgione and the Company learned that the annual "Cost of Insurance Statements" which had been sent by Defendant Gaglio and Defendant Gaglio-Bogen to Forgione and the Company for several years during the period from 2005 to 2012 and which stated the

30

cost for "pension trust policies in your *qualified* retirement program" were false because the Plan as designed and sold to Forgione and the Company had never been qualified.

178.    Despite Defendant Gaglio's representations about Defendant Integrity being a substantial company with more than 60 years of experience, Forgione and the Company learned that Defendant Gaglio had advised FINRA that Defendant Integrity was merely "a trade name used for marketing purposes only."

179.    Despite this and his other deficiencies, at least as late as May 16, 2012, Defendant Gaglio was still misrepresenting himself as a financial advisor who was acting with Plaintiffs' best interests in mind.

180.    Defendant Gaglio did this even though he was only a "CEP" (Certified Estate Planner), a designation that is not recognized in New York and has nothing to do with ERISA.

181.    Specifically, by letter dated May 16, 2012, Defendant Gaglio advised Plaintiffs that Defendant Integrity's "greatest strength is the foundational financial planning and those products and value we offer to our clients in pursuit of security and generational planning; hence, the pension planning that was established." He also stated: "It is clear that whoever is advising you, while well intentioned; is not doing so with the experience and knowledge of a financial consultant, who would never recommend the disruption of these whole life policies at this time which will continue to grow in strength for you at a faster rate. I am addressing you from the perspective with 60+ years of experience that Defendant Integrity has imparted to its clients."

FIRM:24237892v11

## *Defendants Gaglio, Gaglio-Bogen, and Richgat's Status as Agents*

182.    At all relevant times during the period from 2005 to 2012, Defendant Gaglio was an agent of Defendant Integrity, Defendant SFW, and Guardian.

183.    At all relevant times during the period from 2005 to 2012, Defendant SFW was an agent of Defendant PAS.

184.    As principals, Defendant Integrity, Defendant SFW, and Defendant PAS had a duty to ensure that Defendant Gaglio did not engage in fraudulent misrepresentations and omissions.

185.    Rather than preventing or correcting Defendant Gaglio's fraudulent misrepresentations and omissions, Defendant Integrity, Defendant PAS, and Defendant SFW held Defendant Gaglio out to be a financial advisor.

186.    Additionally, as principals, Defendant Integrity, Defendant SFW, and Defendant PAS, had a duty to ensure that Defendant Gaglio did not engage in deceptive business practices.

187.    Rather than preventing or correcting Defendant Gaglio's deceptive business practices, Defendant Integrity, Defendant PAS, and Defendant SFW encouraged them – and profited from them.

188.    As principals, Defendant Integrity, Defendant SFW, and Defendant PAS had a duty to ensure that Defendant Gaglio did not provide negligent financial planning advice.

189.    Defendant Integrity, Defendant SFW, and Defendant PAS, did not prevent or correct Defendant Gaglio's negligent financial planning advice.

FIRM:24237892v11

190. At all relevant times between 2005 and mid-2012, Defendant Gaglio-Bogen was an agent of Defendant Integrity.

191. As a principal, Defendant Integrity had a duty to ensure that Defendant Gaglio-Bogen did not make fraudulent misrepresentations.

192. Despite its duty, Defendant Integrity did not ensure that Defendant Gaglio-Bogen did not make fraudulent misrepresentations, and actually benefitted from her fraudulent misrepresentations.

193. Additionally, because Defendant Integrity was an agent of Defendant SFW and because Defendant SFW was an agent of Defendant PAS, Defendant PAS and Defendant SFW had a duty to ensure that Defendant Gaglio-Bogen did not make fraudulent misrepresentations.

194. Despite this duty, Defendant PAS and Defendant SFW did nothing to ensure that Defendant Gaglio-Bogen did not make fraudulent misrepresentations.

195. Additionally, as principals, Defendant Integrity, Defendant SFW, and Defendant PAS, all had duties to make sure that their pension consultants, such as Defendant Gaglio-Bogen, did not provide negligent pension consulting services.

196. Defendant Integrity, Defendant SFW, and Defendant PAS did not prevent Defendant Gaglio-Bogen from providing negligent pension consulting services.

197. Defendant Richgat was an agent and alter ego of Defendant JR.

FIRM:24237892v11

## COUNT I
### *Violation of Section 404 of ERISA by Defendant Gaglio*

198.     Plaintiffs repeat and reallege their allegations in Paragraphs 1-197 of this Complaint.

199.     Section 404 of ERISA requires a fiduciary to discharge his/her duties with respect to a plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan.

200.     Section Three of ERISA provides that a fiduciary to an ERISA plan is a person who: (i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so; or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan.

201.     Defendant Gaglio was a fiduciary to the Plan because Plan assets were remitted to him for investment, and because he provided investment advice with respect to the Plan, for an indirect fee that he received through commissions on Guardian life insurance he sold.

FIRM:24237892v11

202.    Defendant Gaglio failed to act as a prudent investment advisor with respect to the assets of the Plan because a prudent investment advisor would not have suggested that the Plan make investments for which the greatest benefit was realized by the investment advisor through increased commissions, a prudent investment advisor would not have misrepresented his qualifications, a prudent investment advisor would have realized that a 154% benefit upon retirement was illegal, a prudent investment advisor would not have recommended that the Plan adopt a custom plan document that lacked an IRS approval letter, and a prudent investment advisor would have asked how many employees the Company employs.  Because Defendant Gaglio did not act prudently, he violated his fiduciary duties under Section 404 of ERISA.

203.    As a result of Defendant Gaglio's breach of Section 404 of ERISA, Plaintiffs suffered damages.

## COUNT II
### *Violation of Section 404 of ERISA by Defendant Gaglio-Bogen*

204.    Plaintiffs repeat and reallege their allegations in Paragraphs 1-203 of this Complaint.

205.    Section 404 of ERISA requires a fiduciary to discharge his/her duties with respect to a plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses,

35

unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan.

206.    Section Three of ERISA provides that a fiduciary to an ERISA plan is a person who: (i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so; or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan.

207.    Defendant Gaglio-Bogen was a fiduciary to the Plan because she rendered investment advice with respect to the Plan, and because she had discretionary authority and responsibility over administering loans from the Plan.

208.    Defendant Gaglio-Bogen failed to act as a prudent investment advisor with respect to the assets of the Plan because a prudent investment advisor would have realized that a 154% benefit upon retirement was illegal, and a prudent investment advisor would have asked how many employees the Company employs. Because Defendant Gaglio-Bogen did not act prudently, she violated her fiduciary duties under Section 404 of ERISA.

209.    As a result of Defendant Gaglio-Bogen's breach of Section 404 of ERISA, Plaintiffs suffered damage.

FIRM:24237892v11

## COUNT III
### *Violation of Section 406(b)(3) of ERISA by Defendant Gaglio*

210.     Defendants repeat and reallege the allegations in Paragraphs 1-209 of this Complaint.

211.     Section 406(b)(3) of ERISA prohibits a fiduciary to an ERISA plan from receiving any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

212.     During the period from 2005 through 2012, while acting as a fiduciary to the Plan, Defendant Gaglio caused a large portion of the assets of the Plan to be invested in Guardian whole life insurance policies from which, upon information and belief, Defendant Gaglio, Defendant SFW, and Defendant Integrity received a commission from the premium paid for the Guardian whole life insurance policies.

213.     Defendant Gaglio directed the investment of Plan assets into Guardian whole life insurance policies, not in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries, but for his own personal benefit.

214.     Defendant Gaglio received consideration for his own personal account from Guardian, a party dealing with the Plan, in connection with a transaction involving the assets of the Plan which violated Section 406(b)(3) of ERISA.

## COUNT IV
### *Violation of Section 405(a) of ERISA by Defendant Gaglio-Bogen Making Her Liable for Defendant Gaglio's Breaches of Fiduciary Duty*

215.     Plaintiffs repeat and reallege the allegations in Paragraphs 1-214 of this Complaint.

37

216. Section 405(a) of ERISA holds a fiduciary with respect to a plan will be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan: (1) if the fiduciary participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by failure to comply with Section 404(a)(1) of ERISA in the administration of the fiduciary's specific responsibilities which give rise to her status as a fiduciary, she has enabled such other fiduciary to commit a breach; or (3) if she has knowledge of a breach by such other fiduciary, unless she makes reasonable efforts under the circumstances to remedy the breach.

217. Defendant Gaglio served as a fiduciary to the Plan.

218. Defendant Gaglio-Bogen served as a fiduciary to the Plan.

219. Defendant Gaglio-Bogen had knowledge of Defendant Gaglio's self-dealing.

220. Defendant Gaglio-Bogen made no efforts to remedy Defendant Gaglio's breaches of fiduciary duty.

221. In fact, Defendant Gaglio-Bogen knowingly participated in Defendant Gaglio's self-dealing by assisting him with Forgione's and the Company's investments.

222. As such, under Section 405 of ERISA, Defendant Gaglio-Bogen is liable for all of Defendant Gaglio's breaches of fiduciary duties.

FIRM:24237892v11

## COUNT V
### _Violation of Section 405(a) of ERISA by Defendant Gaglio Making Him Liable for Defendant Gaglio-Bogen's Breaches of Fiduciary Duty_

223.    Plaintiffs repeat and reallege the allegations in Paragraphs 1-222 of this Complaint.

224.    Section 405(a) of ERISA holds a fiduciary with respect to a plan will be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan: (1) if the fiduciary participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by failure to comply with Section 404(a)(1) of ERISA in the administration of the fiduciary's specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

225.    Defendant Gaglio was a fiduciary of the Plan.

226.    Defendant Gaglio-Bogen was a fiduciary of the Plan.

227.    Defendant Gaglio had knowledge of Defendant Gaglio-Bogen's breaches of fiduciary duties.

228.    Defendant Gaglio made no efforts to remedy Defendant Gaglio-Bogen's breaches of fiduciary duty.

229.    In fact, Defendant Gaglio knowingly participated in Defendant Gaglio-Bogen's breaches of fiduciary duties by asking her to assist him with Forgione and the Company' investments.

FIRM:24237892v11

230. As such, under Section 405 of ERISA, Defendant Gaglio is liable for all of Defendant Gaglio-Bogen's breaches of fiduciary duty.

## COUNT VI
### *Violation of ERISA's Code of Conduct for Actuaries by Defendant Richgat*

231. Plaintiffs repeat and reallege the allegations in Paragraphs 1-230 of this Complaint.

232. Under ERISA, an enrolled actuary may only perform actuarial services in a manner that is fully in accordance with all of the duties and requirements for such persons under applicable law and consistent with relevant generally accepted standards for professional responsibility and ethics. 20 C.F.R. § 901.20(b)(1).

233. ERISA prohibits actuaries from engaging in representations that involve a conflict of interest. 20 C.F.R. § 901.20(d)(1).

234. A conflict of interest occurs where there is a significant risk that the representation of one or more clients will be materially limited by the enrolled actuary's responsibilities to another client, a former client, or by a personal interest of the enrolled actuary. 20 C.F.R. § 901.20(d)(1)(ii).

235. Defendant Richgat engaged in a conflict of interest when performing his actuarial services because he worked for Guardian, a company with which a large portion of assets of the Plan were invested due to the purchase of whole life insurance policies through Defendant Gaglio.

FIRM:24237892v11

236. Upon information and belief, Defendant Richgat, through Defendant JR, was hired by Defendant Gaglio to perform actuarial and other services for employee benefit plans to which Defendant Gaglio had sold Guardian whole life insurance policies.

237. Upon information and belief, Defendant JR was a side business for Defendant Richgat while his full time employment was as an actuary for Guardian.

238. Upon information and belief, the majority of revenues earned by Defendant JR, at all relevant times between 2005 and mid-2012, came from employee benefit plans to which Defendant Gaglio had sold life insurance policies.

239. As a result of Defendant Richgat's failure to comply with ERISA's Code of Conduct for Actuaries, Plaintiffs suffered damages.

## COUNT VII
### *Violation of Section 404 of ERISA by Defendant Richgat*

240. Plaintiffs repeat and reallege their allegations in Paragraphs 1-239 of this Complaint.

241. Section 404 of ERISA requires a fiduciary to discharge his/her duties with respect to a plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses,

41

unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan.

242. Section Three of ERISA provides that a fiduciary to an ERISA plan is a person who: (i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so; or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan.

243. Defendant Richgat was a fiduciary to the Plan because he had discretionary authority and discretionary responsibility in the administration of the Plan.

244. Defendant Richgat failed to act as a reasonable and prudent actuary would have because a reasonable and prudent actuary would not have drafted the plan document so that it provided participants with 154% of their income upon retirement. Rather than use a prototype plan that had received an IRS opinion letter indicating that it was qualified, Defendant Richgat unreasonably and imprudently drafted and administered a custom plan without obtaining an IRS opinion letter, and for a period of eight years, continuously advised that the Plan had been qualified by the IRS. Because Defendant Richgat did not act prudently, he violated his fiduciary duties under Section 404 of ERISA.

245. As a result of Defendant Richgat's breach of Section 404 of ERISA, Plaintiffs suffered damages.

FIRM:24237892v11

## COUNT VIII
### *Violation of Section 405(a) of ERISA by Defendant Richgat Making Him Liable for Defendant Gaglio's and Defendant Gaglio-Bogen's Breaches of Fiduciary Duty*

246.    Plaintiffs repeat and reallege the allegations in Paragraphs 1-245 of this Complaint.

247.    Section 405(a) of ERISA provides that a fiduciary with respect to a plan will be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan: (1) if the fiduciary participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by failure to comply with Section 404(a)(1) of ERISA in the administration of the fiduciary's specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

248.    Defendant Richgat was a fiduciary of the Plan.

249.    Defendant Richgat had knowledge of Defendant Gaglio's and Defendant Gaglio-Bogen's breaches of fiduciary duties.

250.    Defendant Richgat made no efforts to remedy Defendant Gaglio's or Defendant Gaglio-Bogen's breaches of fiduciary duty.

251.    In fact, Defendant Richgat knowingly participated in Defendant Gaglio's and Defendant Gaglio-Bogen's breaches of fiduciary duties by agreeing to draft the Plan, and by drafting it incorrectly to financially benefit Defendant Gaglio.

FIRM:24237892v11

252.    As such, under Section 405 of ERISA, Defendant Richgat is liable for all of Defendant Gaglio's and Defendant Gaglio-Bogen's breaches of fiduciary duty.

## COUNT IX
### Violation of Section 405(a) of ERISA by Defendant Gaglio Making Him Liable for Defendant Richgat's Breach of Fiduciary Duty

253.    Plaintiffs repeat and reallege the allegations in Paragraphs 1-252 of this Complaint.

254.    Section 405(a) of ERISA holds a fiduciary with respect to a plan will be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan: (1) if the fiduciary participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by failure to comply with Section 404(a)(1) of ERISA in the administration of the fiduciary's specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

255.    Defendant Gaglio was a fiduciary of the Plan.

256.    Defendant Gaglio had knowledge of Defendant Richgat's breach of fiduciary duty.

257.    Defendant Gaglio made no efforts to remedy Defendant Richgat's breach of fiduciary duty.

FIRM:24237892v11

258. In fact, Defendant Gaglio knowingly participated in Defendant Richgat's breach of fiduciary duty because Defendant Richgat's insertion of 154% into the Plan document instead of 54% benefitted Defendant Gaglio.

259. As such, under Section 405 of ERISA, Defendant Gaglio is liable for all of Defendant Richgat's breaches of fiduciary duty.

## COUNT X
### *Violation of Section 405(a) of ERISA by Defendant Gaglio-Bogen Holding Her Liable for Defendant Richgat's Breach of Fiduciary Duty*

260. Plaintiffs repeat and reallege the allegations in Paragraphs 1-259 of this Complaint.

261. Section 405(a) of ERISA holds a fiduciary with respect to a plan will be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan: (1) if the fiduciary participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by failure to comply with Section 404(a)(1) of ERISA in the administration of the fiduciary's specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

262. Defendant Gaglio-Bogen was a fiduciary of the Plan.

263. Defendant Gaglio-Bogen had knowledge of Defendant Richgat's insertion of 154% into the Plan as the calculation for the amount of benefits a participant would get upon retirement (or termination of employment).

45

264. Defendant Gaglio-Bogen made no efforts to remedy Defendant Richgat's breach of fiduciary duty.

265. In fact, Defendant Gaglio-Bogen knowingly participated in Defendant Richgat's breach of fiduciary duty because Defendant Richgat's breach of fiduciary duty resulted in the payment of a larger commission.

266. As such, under Section 405 of ERISA, Defendant Gaglio-Bogen is liable for all of Defendant Richgat's breaches of fiduciary duty.

## COUNT XI
### *Fraudulent Misrepresentation - Defendant Gaglio*

267. Plaintiffs repeat and reallege their allegations in Paragraphs 1-266 of this Complaint.

268. Defendant Gaglio falsely represented himself to Plaintiffs to be a financial advisor with a specific expertise in employee benefit plans.

269. Defendant Gaglio's business card identified himself as a "Registered Representative and Financial Advisor" even though he lacked a Series 65 license.

270. Defendant Gaglio's representation as a financial advisor even though he had not passed his Series 65 exam was an intentional and material omission of fact.

271. At all relevant times between 2005 and mid-2012, because Defendant Gaglio did not pass his Series 65 exam, he was not allowed to charge a fee to a client.

FIRM:24237892v11

272.    Defendant Gaglio never told Plaintiffs he could not charge a fee because he never passed his Series 65 exam, and he never told Plaintiffs that his income was commissions-based off the sale of Guardian whole life insurance.

273.    Defendant Gaglio cloaked the costs of whole life insurance as "invoices" from Defendant Integrity to induce Plaintiffs to believe that they were paying for consulting services.

274.    Defendant Gaglio knew that Plaintiffs were not paying for consulting services.

275.    Defendant Gaglio recommended that the Plan should be funded significantly through whole life insurance as an investment under the Plan.

276.    Advising Forgione and the Company that they should invest in whole life insurance, but failing to disclose he was a life insurance salesman whose compensation was commission-based was a material omission of fact by Defendant Gaglio.

277.    Defendant Gaglio told Plaintiffs that he worked for Defendant Integrity, which he said was a "pension consultant." This was contrary to the statement he made to FINRA that Defendant Integrity was simply a marketing tool.

278.    Defendant Gaglio also represented to Plaintiffs that Defendant Integrity was affiliated with Defendant PAS, a registered broker dealer, and accordingly Defendant Gaglio, Defendant Integrity, and Defendant PAS were equipped to address the Forgiones' retirement needs.

279.    Defendant Gaglio did this to make it appear as though he had reputable financial institutions, some of which he led Forgione and the Company to believe were not related to him,

47

standing behind his financial advice and ready to assist Forgione and the Company with additional financial services.

280. Plaintiffs relied on Defendant Gaglio's financial recommendations because he represented himself to be a financial advisor with expertise that they needed and the necessary business affiliations to service Plaintiffs, and based on Defendant Gaglio's representation that he was a qualified financial planner, Plaintiffs retained him as an expert in financial planning.

281. Based upon Defendant Gaglio's falsehoods, the Company invested in a retirement product that was mismatched for their needs and the nature of their business.

282. As a result of investing in inappropriate retirement products, Plaintiffs suffered damages.

283. At all pertinent times, Defendant Gaglio was an agent of Defendant Integrity, Defendant SFW, and Guardian.

284. Based on Defendant Gaglio's misstatements, the Company was induced to adopt a customized plan drafted by Defendant Richgat. The Plan was subject to disqualification as it violated the Internal Revenue Code and was administered in a manner contrary to the plan document. Additionally, the Plan, as a customized plan was administered without an IRS opinion letter indicating that the Plan was qualified.

285. Plaintiffs relied on Defendant Gaglio's annual representations that the Plan was qualified.

FIRM:24237892v11

286. Defendant Gaglio continued to provide false information to the Plaintiffs by claiming that the Plan was qualified at least through May 16, 2012.

287. As a result of using Defendant Richgat's custom plan, which was sold to the Company by Defendant Gaglio, Plaintiffs suffered damages.

288. As a result of Plaintiffs continued reliance on Defendant Gaglio's misrepresentations from 2005 through 2012, Plaintiffs suffered damages.

289. At all relevant times from 2005 through 2012, Defendant SFW was an agent of Defendant PAS.

290. As principals, Defendant Integrity, Defendant SFW, Defendant PAS, and Guardian had a duty to ensure that Defendant Gaglio did not engage in fraudulent misrepresentations and omissions.

291. Rather than preventing or correcting Defendant Gaglio's fraudulent misrepresentations and omissions, Defendant Integrity, Defendant PAS, and Defendant SFW held Defendant Gaglio out to be a financial advisor.

292. Defendant SFW, Defendant PAS, and Defendant SFW, did nothing to prevent or rectify Defendant Gaglio's fraudulent misrepresentations about his background – and actually benefitted from it.

### COUNT XII
#### *Fraudulent Misrepresentation - Defendant Gaglio-Bogen*

293. Plaintiffs repeat and reallege their allegations in Paragraphs 1-292 of this Complaint.

FIRM:24237892v11

294.     Defendant Gaglio-Bogen represented herself to Plaintiffs to be a pension consultant with a specific expertise in employee benefit plans.

295.     Defendant Gaglio-Bogen affirmed Defendant Gaglio's recommendation that the Plan should be funded significantly through whole life insurance as an investment under the Plan.

296.     Based on Defendant Gaglio-Bogen's representation that she was a pension consultant with a specific expertise in employee benefit plans, Plaintiffs retained her as an expert in financial planning.

297.     Plaintiffs relied on Defendant Gaglio-Bogen's financial recommendations because she represented herself as having the expertise that they needed for planning for their retirement.

298.     Based upon Defendant Gaglio-Bogen's falsehoods, the Company invested in a retirement product that was mismatched for their needs and the nature of their business.

299.     As a result of investing in inappropriate retirement products, Plaintiffs suffered damages.

300.     At all relevant times between 2005 and 2012, Defendant Gaglio-Bogen was an agent of Defendant Integrity.

301.     As a principal, Defendant Integrity had a duty to ensure that Defendant Gaglio-Bogen did not make fraudulent misrepresentations.

50

302. Despite its duty, Defendant Integrity did not ensure that Defendant Gaglio-Bogen did not make fraudulent misrepresentations, and actually benefitted from her fraudulent misrepresentations.

## COUNT XIII
### *Deceptive Business Practices in Violation of Section 349 of New York's General Business Law by Defendants Gaglio and Richgat*

303. Plaintiffs repeat and reallege their allegations in Paragraphs 1-302 of this Complaint.

304. Defendant Gaglio represented himself to the Forgione and the Company as a financial advisor.

305. Defendant Gaglio's business card (that he gave Forgione and the Company) stated that he was a "Registered Representative and Financial Advisor."

306. Defendant Gaglio represented himself as a financial advisor even though he has not passed his Series 65 exam.

307. Because Defendant Gaglio did not pass his Series 65 exam, he was not allowed to charge a fee to a client.

308. Defendant Gaglio never told Forgione and the Company he could not charge them a fee because he never passed his Series 65 exam.

309. Defendant Gaglio never told Forgione and the Company he was a life insurance salesman.

FIRM:24237892v11

310.     Defendant Gaglio never told Forgione and the Company he was paid through commissions he made by selling Guardian life insurance policies.

311.     By telling Plaintiffs he possessed credentials which he did not, Defendant Gaglio materially misled Plaintiffs.

312.     By disguising his method of payment to Forgione and the Company (which was a conflict of interest), Defendant Gaglio materially misled Forgione and the Company.

313.     Defendant Gaglio's material omissions were deceptive.

314.     Defendant Gaglio's material omissions were designed to garner more business/consumers for himself.

315.     Because Defendant Gaglio represented to Forgione and the Company that he was a financial advisor, Forgione and the Company reasonably believed him to be an expert in financial planning.

316.     Because Defendant Gaglio told Forgione and the Company that he was an experienced pension consultant, affiliated with Defendant Integrity and Defendant PAS, the Forgiones reasonably believed Defendant Gaglio would be able to fulfill their retirement program needs.

317.     As a result of their reliance on Defendant Gaglio's recommendation, Forgione and the Company invested in a retirement program vehicle that was inappropriate for the goals they were trying to achieve.

FIRM:24237892v11

318. Defendant Gaglio represented that Defendant Richgat was competent to design and draft the Plan based on a prototype and adoption agreement.

319. Through his actions, Defendant Richgat represented that he was competent to design and draft the Plan and to prepare amendments to the Plan.

320. Upon information and belief, Defendant Richgat is not an attorney licensed to practice law in the state of New York.

321. The preparation of adoption agreements and plan amendments for an employee benefits plan constitutes the practice of law.

322. Only attorneys are deemed to be competent to design and draft a plan and prepare amendments to a plan.

323. Defendant Richgat charged Plaintiffs money to design and draft the Plan and to prepare amendments to the Plan.

324. Forgione and the Company relied on Defendant Richgat to competently design and draft the Plan and to prepare amendments to the Plan.

325. The Plan, as designed and drafted by Defendant Richgat, was subject to disqualification by the IRS because it was top heavy in violation of Section 415 of ERISA, was a customized plan for which no IRS qualification letter had been issued or sought, and was administered for a eight years in a manner contrary to the plan document.

326. As a result of Defendant Richgat's improper preparation of Plan documents, Plaintiffs suffered damages.

FIRM:24237892v11

327. Defendant Richgat engaged in deceptive business practices under N.Y. GBS. LAW § 349 when he falsely represented to Plaintiffs through his actions that he was competent to prepare a legal document using his independent judgment without the supervision of an attorney when he was not competent to do so.

328. Defendants Gaglio and Richgat engaged in deceptive business practices under N.Y. GBS. LAW § 349 when they falsely represented that the Plan, as drafted and designed, was qualified by the IRS.

329. As a result of the deceptive business practices of Defendants Gaglio and Richgat, Plaintiffs suffered damages.

330. At all pertinent times, Defendant Richgat was an agent and alter ego of Defendant JR.

331. At all pertinent times, Defendant Gaglio was an agent of Defendant Integrity.

332. At all pertinent times, Defendant Gaglio was an agent of Defendant SFW and Guardian.

333. At all pertinent times, Defendant SFW was an agent of Defendant PAS.

334. As principals, Defendant Integrity, Defendant SFW, and Defendant PAS, had a duty to ensure that Defendant Gaglio did not engage in deceptive business practices.

335. Rather than preventing or correcting Defendant Gaglio's deceptive business practices, Defendant Integrity, Defendant SFW, and Defendant PAS, encouraged them – and profited from them.

FIRM:24237892v11

## COUNT XIV
### *Breach of Covenant of Good Faith and Fair Dealing*

336. Plaintiffs repeat and reallege their allegations in Paragraphs 1-335 of this Complaint.

337. The Company contracted with Defendant Gaglio for the provision of retirement program services.

338. Defendant Gaglio contracted with the Company to be a service provider to the Plan.

339. Forgione and the Company paid consideration for Gaglio's services.

340. In return for this consideration, Defendant Gaglio was required to provide Forgione and the Company with reasonable, competent, and prudent financial advice.

341. Pursuant to his contract with the Company for the provision of retirement program services, Defendant Gaglio had a duty not to engage in actions that would destroy or injure the right of the Company to benefit from the contract.

342. Defendant Gaglio fraudulently advised Forgione and the Company that the Plan, as he recommended, was compliant with the Internal Revenue Code and ERISA when, in fact, the Plan violated the Internal Revenue Code and ERISA since it was: (a) top heavy; (2) administered contrary to the Plan documents; and (3) was a custom plan for which an IRS qualification letter was never received or even sought.

343. Despite Defendant Gaglio's representations to the contrary, the Plan violated the Internal Revenue Code and ERISA from its inception.

FIRM:24237892v11

344. Defendant Gaglio breached his contractual duty not to engage in actions that would injure the right of Forgione and the Company to benefit from the contract by advising the Company to invest in a retirement vehicle that would benefit Defendant Gaglio, not the Company, even though the Company had contracted with Defendant Gaglio to get a retirement vehicle that would best suit its needs.

345. At all pertinent times, Defendant Gaglio was an agent of Defendant Integrity.

346. At all pertinent times, Defendant Gaglio was an agent of Defendant SFW and Guardian.

347. At all pertinent times, Defendant SFW was an agent of Defendant PAS.

348. As principals, Defendant Integrity, Defendant SFW, Defendant PAS, and Guardian had a duty to ensure that Defendant Gaglio did not breach his contractual duty of good faith and fair dealing.

349. Rather than preventing or correcting Defendant Gaglio's breach of the contractual duty of good faith and fair dealing, Defendant Integrity, Defendant SFW, Defendant PAS, and Guardian encouraged it – and profited from it.

350. As a result of Defendant Gaglio's breach of the contractual duty of good faith and fair dealing, Plaintiffs suffered damages.

FIRM:24237892v11

## COUNT XV
### *Negligence by Defendant Gaglio by Selling a Customized Top Heavy Plan That Had Not Been Qualified by the IRS*

351.    Plaintiffs repeat and reallege their allegations in Paragraphs 1-350 of this Complaint.

352.    By holding himself out as a financial advisor, Defendant Gaglio had a duty to provide Plaintiffs with competent financial planning advice.

353.    Defendant Gaglio breached this duty by recommending that Forgione and the Company establish and maintain a top-heavy retirement plan, resulting in a Plan subject to disqualification that had to be corrected in order to avoid losing its tax-favored status under the Code, as amended.

354.    A plan that is not qualified by the IRS provides its sponsors with no tax benefits and actually results in the plan sponsors having to pay additional taxes, interest, and penalties.

355.    A reasonable and prudent financial advisor would not have recommended a retirement program that was subject to disqualification by the IRS because of the tax detriments, penalties, and interest.

356.    As a result of Defendant Gaglio's sale of a plan that was subject to disqualification by the IRS, Plaintiffs suffered damages.

357.    At all pertinent times, Defendant Gaglio was an agent of Defendant Integrity.

358.    At all pertinent times, Defendant Gaglio was an agent of Defendant SFW and Guardian.

FIRM:24237892v11

359.    At all pertinent times, Defendant SFW was an agent of Guardian.

360.    As principals, Defendant Integrity, Defendant SFW, Defendant PAS, and Guardian had a duty to ensure that Defendant Gaglio did not provide negligent financial planning advice.

361.    Defendant Integrity, Defendant SFW, Defendant PAS, and Guardian did not prevent or correct Defendant Gaglio's negligent financial planning advice.

## COUNT XVI
### *Negligence by Defendant Gaglio for Failure to Seek Information Regarding the Demographics of the Company*

362.    Plaintiffs repeat and reallege their allegations in Paragraphs 1-361 of this Complaint.

363.    By holding himself out as a financial advisor, Defendant Gaglio had a duty to provide Plaintiffs with competent financial planning advice.

364.    A reasonable and competent financial advisor would request that a company produce information regarding the demographics of the company and its employees.

365.    Defendant Gaglio failed to ask Forgione and the Company how many hours the landscaping employees worked or how many months per year such employees worked.

366.    Rather, Defendant Gaglio incorrectly determined that such employees would not count as full-time employees for purposes of the Plan, even though the threshold for full-time employment under ERISA is only 1,000 hours, and it would be difficult for the Company to have made the money it did without a robust, active workforce.

FIRM:24237892v11

367. As a result of Defendant Gaglio's failure to inquire about the demographics of their work force, Plaintiffs suffered damages.

368. At all pertinent times, Defendant Gaglio was an agent of Defendant Integrity.

369. At all pertinent times, Defendant Gaglio was an agent of Defendant SFW and Guardian.

370. At all pertinent times, Defendant SFW was an agent of Defendant PAS.

371. As principals, Defendant Integrity, Defendant SFW, Defendant PAS, and Guardian had a duty to ensure that Defendant Gaglio did not provide negligent financial services.

372. Defendant Integrity, Defendant SFW, Defendant PAS, and Guardian did nothing to prevent Defendant Gaglio from providing negligent financial services.

### COUNT XVII
### _Negligence by Defendant Gaglio-Bogen for Annually Failing to Seek Information Regarding the Demographics of the Company_

373. Plaintiffs repeat and reallege their allegations in Paragraphs 1-372 of this Complaint.

374. At all relevant times between 2005 and mid-2012, Defendant Gaglio-Bogen represented herself to be a pension consultant.

375. By holding herself out as a pension consultant, Defendant Gaglio-Bogen had a duty to provide Forgione and the Company with competent advice about their pension and retirement needs.

FIRM:24237892v11

376. A reasonable and competent pension consultant would ask business owners about the make-up of their workforce to determine what type of retirement program would best suit their needs.

377. Accordingly, Defendant Gaglio-Bogen had a duty to inquire about the make-up of the Company's workforce when determining what type of retirement program would best suit Forgione's and the Company's needs.

378. Annually throughout plan years 2005-2011, Defendant Gaglio-Bogen failed to ask the Company how many hours their landscaping employees worked or how many months per year such employees worked.

379. Rather, annually, throughout plan years 2005-2011 Defendant Gaglio-Bogen incorrectly advised that such employees would not count as full-time employees for purposes of the Plan, even though the threshold for full-time employment under ERISA is only 1,000 hours, and it would be difficult for the Company to have made the money it did without a robust, active workforce.

380. As a result of Defendant Gaglio-Bogen's failure to inquire about the demographics of their work force, Plaintiffs suffered damages.

381. Upon information and belief, at all relevant times between 2005 and mid-2012, Defendant Gaglio-Bogen was an agent of Defendant Integrity.

382. Defendant Integrity was an agent of Defendant SFW.

383. Defendant SFW was an agent of Defendant PAS.

FIRM:24237892v11

384. As principals, Defendants Integrity, SFW, and PAS all had duties to make sure their pension consultants did not provide negligent consulting services.

385. Defendants Integrity, SFW, and PAS failed to do this.

## COUNT XVIII
### *Negligence By Defendant Gaglio-Bogen As Plan Administrator*

386. Plaintiffs repeat and reallege their allegations in Paragraphs 1-385 of this Complaint.

387. Defendant Gaglio-Bogen served as an Administrator to the Plan because she administered loans from the Plan.

388. As Plan Administrator, Defendant Gaglio-Bogen had a duty to administer the loans properly, in accordance with Plan terms.

389. Defendant Gaglio-Bogen failed to do this and did not properly collect loan repayments from Plan Participants.

390. A reasonable and competent Plan Administrator would have properly collected loan repayments from the Plan Participants.

391. As a result of Defendant Gaglio-Bogen's negligence, Plaintiffs suffered damages.

392. At all relevant times between 2005 and mid-2012, Defendant Gaglio-Bogen was an agent of Defendant Integrity.

393. As a principal, Defendant Integrity had a duty to ensure that Defendant Gaglio-Bogen did not provide negligent financial planning advice.

FIRM:24237892v11

394. Defendant Integrity did not prevent or correct Defendant Gaglio-Bogen's negligent financial planning advice.

## COUNT XIX
### *Negligence by Defendant Richgat*

395. Plaintiffs repeat and reallege their allegations in Paragraphs 1-394 of this Complaint.

396. Defendant Richgat billed Plaintiffs for services he performed, including drafting and designing the Plan and serving as the Plan Administrator.

397. As an actuary, Defendant Richgat had a duty under ERISA to only undertake assignments if qualified to do so and to perform actuarial services only in a manner that is fully in accordance with all of the duties and requirements for such persons under applicable law and consistent with relevant generally accepted standards for professional responsibility and ethics pursuant to 20 C.F.R. §§ 901.20(a) & 901.20(b)(1).

398. By undertaking the drafting of the Plan, Defendant Richgat exceeded the actuarial function and performed the settlor function.

399. The settlor function was to design and draft the Plan.

400. Defendant Richgat failed to design and draft the Plan competently.

401. Upon information and belief, designing and drafting a plan is an attorney function.

402. Upon information and belief, Defendant Richgat is not an attorney.

FIRM:24237892v11

403. By undertaking an assignment outside the scope of his functions as an actuary, Defendant Richgat violated the actuarial code of conduct as set forth in 20 C.F.R. §§ 901.20(a) & 901.20(b)(1).

404. In his settlor function, Defendant Richgat designed and drafted a plan which was illegal because it violated Section 415 of the Internal Revenue Code, was contrary to the terms of the prototype, and was a custom plan without an IRS opinion letter indicating that it was qualified.

405. Defendant Richgat assumed the role of Plan Administrator pursuant to which he had a duty to competently and adequately perform administrative tasks.

406. Defendant Richgat did not competently and adequately perform administrative tasks as he: (a) never submitted Forms 5500 to the PBGC; (b) failed to amend the Plan documents to comply with EGTRRA amendments; (c) never advised Forgione and the Company that the Plan was a custom plan which required an IRS determination letter; (d) falsely stated that the Plan was qualified on an annual basis from 2005 through 2012; and (e) never acknowledged, noticed or corrected the Plan documents provision of monthly benefits equal to 154% of monthly compensation.

407. As a result of Defendant Richgat's negligence, Plaintiffs suffered damages.

## COUNT XX
### *Malpractice by Defendant Richgat*

408. Plaintiffs repeat and reallege their allegations in Paragraphs 1-407 of this Complaint.

FIRM:24237892v11

409. Defendant Richgat billed Plaintiffs for services he performed including drafting and designing the Plan and serving as the Plan Administrator.

410. As an actuary, Defendant Richgat had a duty under ERISA to only undertake assignments if qualified to do so and to perform actuarial services only in a manner that is fully in accordance with all of the duties and requirements for such persons under applicable law and consistent with relevant generally accepted standards for professional responsibility and ethics pursuant to 20 C.F.R. §§ 901.20(a) & 901.20(b)(1).

411. By undertaking the drafting of the Plan, Defendant Richgat exceeded the actuarial function and performed the settlor function.

412. The settlor function was to design and draft the Plan.

413. Defendant Richgat failed to design and draft the Plan competently.

414. Upon information and belief designing and drafting a plan is an attorney function.

415. Upon information and belief, Defendant Richgat is not an attorney.

416. By undertaking an assignment outside the scope of his functions as an actuary, Defendant Richgat violated the actuarial code of conduct as set forth in 20 C.F.R. §§ 901.20(a) & 901.20(b)(1).

417. In his settlor function, Defendant Richgat designed and drafted a plan which was illegal because it violated Section 415 of the Internal Revenue Code, was contrary to the terms of the prototype, and was a custom plan without an IRS opinion letter indicating that it was qualified.

FIRM:24237892v11

418. Defendant Richgat assumed the role of Plan Administrator pursuant to which he had a duty to competently and adequately perform administrative tasks.

419. Defendant Richgat did not competently and adequately perform administrative tasks as he: (a) never submitted Forms 5500 to the PBGC; (b) failed to amend the Plan documents to comply with EGTRRA amendments; (c) never advised Forgione and the Company that the Plan was a custom plan which required an IRS determination letter; (d) falsely stated that the Plan was qualified on an annual basis from 2005 through 2012; and (e) never acknowledged, noticed or corrected the Plan documents provision of monthly benefits equal to 154% of monthly compensation.

420. As a result of Defendant Richgat's malpractice, Plaintiffs suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Matthew Gaglio, Johanna Gaglio-Bogen, Jeffrey Richgat, JR Pension Services, Inc., Integrity Advisors Pension Consultants, Inc., NY Rosbruch/Harnik, Inc., D/B/A Strategies For Wealth, and Park Avenue Securities, LLC, as follows:

1. On Counts I, III, V, and IX: An order pursuant to 29 U.S.C. §§ 1132(a)(2) & 1132(a)(3) directing Matthew Gaglio to restore to the Plan any losses caused by his breaches of fiduciary duty and disgorge profits.

2. On Counts II, IV, and X: An order pursuant to 29 U.S.C. §§ 1132(a)(2) & 1132(a)(3) directing Johanna Gaglio-Bogen to restore to the Plan any losses caused by her breaches of fiduciary duty and disgorge profits.

FIRM:24237892v11

3.  On Count VI:  An order pursuant to 29 U.S.C. § 1132(a)(3) directing Jeffrey Richgat to disgorge any fees he received for the performance of actuarial or other services to the Plan.

4.  On Counts VII and VIII:  An order pursuant to 29 U.S.C. §§ 1132(a)(2) & 1132(a)(3) directing Jeffrey Richgat to restore to the Plan any losses caused by his breaches of fiduciary duty and disgorge profits.

5.  On Counts XI and XII: An order pursuant to New York State's common law of fraud directing Matthew Gaglio, Johanna Gaglio-Bogen, Integrity Advisors Pension Consultants, Inc., NY Rosbruch/Harnik, Inc., D/B/A Strategies For Wealth and Park Avenue Securities, LLC, to pay compensatory damages to make Plaintiffs whole for the losses resulting from their reasonable reliance on the representations made by Matthew Gaglio and Johanna Gaglio-Bogen as well as prejudgment interest on aforementioned compensatory damages.

6.  On Count XIII:  An order pursuant to N.Y. GBS. LAW 349(h) directing Matthew Gaglio, Jeffrey Richgat, JR Pension Services Inc., Integrity Advisors Pension Consultants, Inc., NY Rosbruch/Harnik, Inc., D/B/A Strategies For Wealth, and Park Avenue Securities, LLC, to pay compensatory damages for the losses caused by Matthew Gaglio and Jeffrey Richgat's deceptive practices, punitive damages, interest on compensatory damages, court costs, and reasonable attorneys' fees.

7.  On Count XIV:  An order pursuant to New York State's common law of contracts directing Matthew Gaglio, Integrity Advisors Pension Consultants, Inc., NY Rosbruch/Harnik, Inc., D/B/A Strategies For Wealth, and Park Avenue Securities to

FIRM:24237892v11

disgorge all payments and commissions made by on behalf of the Plan, compensatory damages, and interest on compensatory damages.

8. On Counts XV and XVI: An order pursuant to New York State's common law of torts directing Matthew Gaglio, Integrity Advisors Pension Consultants, Inc., NY Rosbruch/Harnik, Inc., D/B/A Strategies For Wealth, and Park Avenue Securities, LLC, to pay compensatory damages and interest on compensatory damages.

9. On Counts XVII and XIII: An order directing Johanna Gaglio-Bogen, Integrity Advisors Pension Consultants, Inc., and Park Avenue Securities to pay compensatory damages and interest on compensatory damages.

10. On Counts XIX and XX: An order pursuant to New York State's common law of torts directing Jeffrey Richgat and JR Pension Services, Inc. to pay compensatory damages and interest on compensatory damages.

11. On Counts I through X: An order directing Matthew Gaglio, Johanna Gaglio-Bogen, Jeffrey Richgat, Integrity Advisors Pension Consultants, Inc., JR Pension Services, Inc., NY Rosbruch/Harnik, Inc., D/B/A Strategies For Wealth, and Park Avenue Securities, LLC to: personally pay reasonable attorneys' fees and costs of this action pursuant to 29 U.S.C. § 1132(g), and such other legal or equitable relief as this Court deems appropriate.

12. Plaintiffs further request that this Court grant such other and further relief deemed just and proper.

FIRM:24237892v11

Dated:    December 20, 2013
           New York, New York

EPSTEIN BECKER & GREEN, P.C.

By: _____

Paul A. Friedman
Margaret C. Thering

250 Park Avenue
New York, New York 10177-0077
(212) 351-4500
*Attorneys for Plaintiffs*

FIRM:24237892v11